## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BENJAMIN LEE #114229** | **CIVIL ACTION** |
| **versus** | **NO. 06-9669** |
| **BURL CAIN, WARDEN** | **SECTION: "F" (3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Benjamin Lee, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On May 22, 2000, he was convicted of aggravated battery in violation of La.Rev.Stat.Ann. § 14:34.[2]  He was subsequently found to be a third offender and was sentenced as such to a term of life imprisonment, without benefit of parole, probation, or suspension of sentence, but with credit for time served.[3]  On August 21, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court a related writ application which was denied on September 5, 2003.[5]

On or about February 11, 2003, petitioner filed with the state district court a motion to correct an illegal sentence[6] which was denied on June 23, 2003.[7]  He then filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review[8] which was denied on September 5, 2003.[9]

---

[2] State Rec., Vol. I of II, minute entry dated May 22, 2000.

[3] State Rec., Vol. I of II, transcripts of July 7, 2000, and July 12, 2000; State Rec., Vol. I of II, minute entries dated July 7, 2000, and July 12, 2000.

[4] State v. Lee, 826 So.2d 616 (La. App. 4th Cir. 2002) (No. 2001-KA-2082); State Rec., Vol. I of II.

[5] State v. Lee, 852 So.2d 1019 (La. 2003) (No. 2002-KO-2549).

[6] State Rec., Vol. II of II.

[7] State Rec., Vol. II of II.

[8] State Rec., Vol. II of II.

[9] State v. Lee, No. 2003-K-1369 (La. App. 4th Cir. Sept. 5, 2003) (unpublished); State Rec., Vol. II of II.

On or about March 26, 2004, petitioner filed with the state district court an application for post-conviction relief.[10]  When he received no ruling on that application, he filed a petition for a writ of mandamus[11] with the Louisiana Fourth Circuit Court of Appeal.[12]  The court treated the application as one for a supervisory writ and denied petitioner's claims on procedural grounds on July 29, 2005.[13]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari and review[14] which was denied on August 18, 2006.[15]

On September 30, 2006, petitioner filed this federal application for *habeas corpus* relief.[16]  In support of his application, he raises the following claims:

1.   Petitioner was denied his rights under the federal Confrontation Clause;

2.   Petitioner received ineffective assistance of counsel in the habitual offender proceedings; and

3.   Petitioner was wrongly found to be a habitual offender.

---

[10]  Supplemental State Rec., Vol. I of I.

[11]  State Rec., Vol. II of II.

[12]  State Rec., Vol. II of II.

[13]  State v. Lee, No. 2005-K-1060 (La. App. 4th Cir. July 29, 2005) (unpublished); State Rec., Vol. II of II.

[14]  State Rec., Vol. II of II.

[15]  State *ex rel.* Lee v. State, 935 So.2d 146 (La. 2006) (No. 2006-KH-0382); State Rec., Vol. II of II.

[16]  Rec. Doc. 1.

The state concedes that petitioner's application is timely filed[17] and does not contend that he failed to exhaust his state court remedies.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

---

[17] Rec. Doc. 11, pp. 2-4.

> stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1); <u>Hill</u>, 210 F.3d at 485.

Facts

The facts of the instant case, as summarized by the Louisiana Fourth Circuit Court of Appeal on direct appeal, are as follows:

> Officer Johnnie Carter testified that on February 22, 2000, he responded to a domestic disturbance call at 3930 Gibson Street. When he arrived on the scene, he found the victim, Tanesha Marcelin, crying and in pain.  Carter learned that the victim and Benjamin Lee, the victim's former boyfriend, got into an argument during which Lee struck Marcelin on her leg with a hammer and in the face with a lamp.  When she screamed, her cousin Kenneth came to her aid, and was punched by the defendant.  Officer Carter noted bruises, cuts and lacerations on the victim's face and bruises on her left leg, which appeared to have been inflicted by an object.  Marcelin told the officer she wanted to press charges against Lee.  No weapon was recovered from the house. Officer Carter further testified that he interviewed the victim's cousin, Kenneth, who told him that when he tried to stop Lee from attacking the victim, Lee struck him in the face with his fist.  Officer Carter photographed the victim's injuries, completed his initial report, and turned the matter over to Detective Doug Eckert for further investigation.
>
> The victim's mother, Ms. Shwanda Marcelin, testified that her daughter and Lee dated for two years. Ms. Marcelin visited the victim on the day of the incident, and observed the victim's swollen leg and bite marks on her face.  Ms. Marcelin identified photographs introduced at trial as depicting the victim's injuries.  She brought to court a letter, which she found on the victim's kitchen table.  The

- 5 -

letter was inside an envelope addressed to the victim at her home, and showed Benjamin Lee's name and the address of the Orleans Parish Jail as the return address.  The letter was post marked May 2, 2000.  Ms. Marcelin identified the handwriting and the signature on the letter as belonging to the defendant.  She read from a part of the letter in which the writer asks the recipient not to testify against him at trial.

Detective Doug Eckert testified that he performed the follow up investigation in this case, and interviewed the victim by telephone.  The victim told him that she and Lee argued and that Lee struck her with a hammer.  She also told him that Lee hit her cousin, Kenneth, with his fist when Kenneth came to her aid.  The victim stated she wanted to press charges against Lee.  Detective Eckert also interviewed Kenneth who corroborated the victim's rendition of the incident and the injuries sustained.  Eckert further testified that based upon his investigation, he obtained an arrest warrant for Lee on the charge of aggravated battery of Tanesha Marcelin.

Neither the victim nor her cousin testified at the trial.

The defense called no witnesses.[18]

### Confrontation Clause

Petitioner claims that his rights under the federal Confrontation Clause were violated.  As noted, at trial, the state called only three witnesses.  The first witness, investigating Officer Johnnie Carter, arrived on the scene *after* the alleged battery and when petitioner was no longer there.  Although Carter observed the victim's injuries, his knowledge of the cause of the injuries and petitioner's alleged involvement was derived solely from what Carter was allegedly told by the victim and her cousin.  The second witness, the victim's mother, also was not present at the time of the alleged battery and her knowledge of the incident was likewise based solely on what she was purportedly told by the victim.  The last witness, Detective Doug Eckert, was never at the scene of

---

[18]  State v. Lee, 826 So.2d 616, 620-21 (La. App. 4th Cir. 2002) (No. 2001-KA-2082); State Rec., Vol. I of II.

the crime, and again his knowledge of the incident was based entirely on what he was allegedly told by the victim and her cousin.

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted by the witnesses against him." U.S. Const. amend. VI.  The United States Supreme Court has made clear in recent cases that the Confrontation Clause is violated by the admission of out-of-court "testimonial statements" unless the declarant is unavailable *and* the defendant had a prior opportunity to cross-examine the declarant regarding the statements.  Crawford v. Washington, 541 U.S. 36, 68 (2004).  The fact that the statements would be otherwise admissible as an exception to the hearsay rule or under other applicable laws of evidence is of no moment.  "Where testimonial statements are at issue, the *only* indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes:  confrontation."  Id. at 68-69 (emphasis added).

In Davis v. Washington, 126 S.Ct. 2266 (2006), the United States Supreme Court explained, at least in part, the difference between "nontestimonial" and "testimonial" statements:

> Without attempting to produce an exhaustive classification of all conceivable statements – or even all conceivable statements in response to police interrogation – as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows:  Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an *ongoing emergency.*  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that *the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.*

Id. at 2273-74 (emphasis added).

- 7 -

In the instant case, the statements made by the victim and her cousin to Officers Carter and Eckert were testimonial statements.  When Carter arrived, the incident was over and petitioner was not on the scene; therefore, clearly there was no *ongoing* emergency.  The statements made to Eckert were made even later.  Further, in that there was no evidence presented at trial as to the unavailability of the victim or her cousin to testify, and in that there is no evidence whatsoever that petitioner has ever had an opportunity to cross-examine those individuals regarding their alleged statements, it appears that, under Crawford, petitioner's rights under the Confrontation Clause were indeed violated.

That conclusion, however, does not aid petitioner.  Crawford was decided on March 8, 2004, *after* petitioner's conviction became final.  The United States Supreme Court has expressly held that its holding in Crawford is *not* retroactive to cases already final on direct review.  Whorton v. Bockting, 127 S.Ct. 1173 (2007).  Accordingly, the Court must evaluate petitioner's claim under the law as it existed prior to Crawford.

Prior to Crawford, such Confrontation Clause claims were analyzed under the guidelines set forth by the United States Supreme Court in Ohio v. Roberts, 448 U.S. 56 (1980), and its progeny.  In Roberts, the Supreme Court was "called upon to consider once again the relationship between the Confrontation Clause and the hearsay rule with its many exceptions."  Id. at 62.  The Supreme Court observed:

> If one were to read [the Confrontation Clause] literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial.  But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme.

- 8 -

        The historical evidence leaves little doubt, however, that the Clause was intended to exclude some hearsay.  Moreover, underlying policies support the same conclusion.  The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that a primary interest secured by the provision is the right of cross-examination.  In short, the Clause envisions a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting of the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand the manner in which he gives his testimony whether he is worthy of belief.

Id. at 63-64 (internal citations, footnotes, quotation marks, and brackets omitted).  The Supreme

Court continued:

        The Court, however, has recognized that competing interests, if closely examined, may warrant dispensing with confrontation at trial.  Significantly, every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings.

        This Court, in a series of cases, has sought to accommodate these competing interests.  True to the common-law tradition, the process has been gradual, building on past decisions, drawing on new experience, and responding to changing conditions.  The Court has not sought to map out a theory of the Confrontation Clause that would determine the validity of all hearsay exceptions.  But a general approach to the problem is discernible.

        The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay.  First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity.  In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.

        The second aspect operates once a witness is shown to be unavailable.  Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay

marked with such trustworthiness that there is no material departure from the reason of the general rule.  The principle recently was formulated in <u>Mancusi v. Stubbs</u>:

> "The focus of the Court's concern has been to insure that there are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant, and to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.  It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.' "  [408 U.S. 204, 213 (1972).]

> The Court has applied this "indicia of reliability" requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the substance of the constitutional protection. This reflects the truism that hearsay rules and the Confrontation Clause are generally designed to protect similar values, and stem from the same roots. It also responds to the need for certainty in the workaday world of conducting criminal trials.
>
> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable.  Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

<u>Roberts</u>, 448 U.S. at 64-66 (internal citations, footnotes, quotation marks, and ellipsis omitted).

In the instant case, the most damning testimony was that of Officer Carter, who testified that, immediately after the incident, the victim told him what had occurred.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal found that testimony was properly admitted pursuant to La.Code Evid. art. 803(2), which excludes from the hearsay rule, regardless of the

availability of the declarant, an "excited utterance," which is defined in the article as "[a] statement relating a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[19]

---

[19]  The Court of Appeal held:

> The State argues that the hearsay testimony elicited from Officer Carter was admissible under an exception to the hearsay rule. In State v. Dalton, 99-0902, p. 3 (La.App. 4 Cir. 3/29/00), 759 So.2d 180, 181 this Court noted:
>
> > La. C.E. article 801 C defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. article 802 provides "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." La. C.E. article 803 provides excited utterances are not excluded by the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." La. C.E. article 803(2). This exception requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought process inoperative. State v. Reaves, 569 So.2d 650 (La.App. 2nd Cir.1990), writ den., 576 So.2d 25 (La. 1991). Furthermore, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La. 1978).
>
> In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. State v. Reaves, supra. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and a restoration of a reflective thought process. State v. Henderson, supra.
>
> At the trial of this matter, Officer Carter testified that he

Despite the broad language in Roberts, the United States Supreme Court subsequently expressly held that admission of such "spontaneous declarations" did not violate the Confrontation Clause even where there was no showing that the declarant was unavailable. White v. Illinois, 502 U.S. 346 (1992). Accordingly, based on White, the undersigned finds that, under the law as it existed *prior* to Crawford, the Confrontation Clause was not violated by the admission of Carter's testimony regarding the victim's statements.

The same cannot necessarily be said of the testimony of Officer Eckert and the victim's mother. Their testimony regarding the victim's statements do not appear to fit within any exception to the hearsay rule.[20] Accordingly, as to those witnesses, there arguably *was* a violation of the Confrontation Clause. However, that does not mean that petitioner is necessarily entitled to relief, because the United States Fifth Circuit Court of Appeals has held that "violations of the

---

responded to an emergency call for assistance. When he arrived at the scene, he observed the victim crying and in pain. At this point, immediately after making an emergency call for police assistance and while still visibly under the stress of the event, the victim stated that Lee struck her with a hammer. Moreover, at the motion hearing on May 5, 2000, in response to the question posed to him regarding how long after the incident the victim spoke with him, Officer Carter stated, "Probably minutes." The trial judge in this case heard this testimony prior to trial and deemed it admissible. Considering that Officer Carter arrived at the scene within minutes of the incident, and observed the victim's fear, agitation and pain, this testimony clearly fits within the excited utterance exception to the hearsay rule and was properly admitted into evidence.

State v. Lee, 826 So.2d at 625-26; State Rec., Vol. I of II.

[20] On direct appeal, the state even conceded that Eckert's testimony constituted inadmissible hearsay. State v. Lee, 826 So.2d at 626; State Rec., Vol. I of II.

Confrontation Clause are still subject to harmless error analysis." Hafdahl v. Johnson, 251 F.3d 528,

539 (5th Cir. 2001).  Under the facts of the instant case, the undersigned finds that the testimony of

Officer Eckert and the victim's mother regarding the victim's statements were ultimately harmless.

> The United States Fifth Circuit Court of Appeals has held:
>
> > To determine whether the [Confrontation Clause] error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Id. at 540 (quotation marks omitted).  In light of Officer Carter's properly admitted testimony

regarding the victim's statements, the similar testimony of Eckert and the victim's mother was

merely cumulative.  Also admitted at trial was other evidence which corroborated the truthfulness

of the victim's accusations, i.e. the evidence of the victim's injuries and petitioner's letter to the

victim in which he admits the crime.[21]  Therefore, in view of the foregoing, the undersigned

---

[21] On direct appeal, the Louisiana Fourth Circuit Court of Appeal observed:

> Contrary to Lee's assertion in this case, the State presented both testimonial and photographic evidence of physical injuries sustained by the victim. ... Moreover, the State presented a letter written by the defendant to the victim.  In the letter Lee writes, "[Y]ou can't tell them the truth about me hitting you with a hammer if you want to help me."  The letter continues, "[Y]ou have to lie .... Please don't tell the truth, because you said they are trying to give me life ....  Bae, you can't take the stand on me that is the bottom line, there's no if's and's or but's about it, because if you do and tell them what happened I'm gone for life or a very long time."

State v. Lee, 826 So.2d at 623-24; State Rec., Vol. I of II.

concludes that although the trial court erred in admitting the testimony of Officer Eckert and the victim's mother regarding the victim's statement, those errors were ultimately harmless[22] and therefore do not warrant federal *habeas corpus* relief.

---

[22]   On direct appeal, the Louisiana Fourth Circuit Court of Appeal reached a similar conclusion in finding that the erroneous admission of Eckert's hearsay testimony was harmless for several reasons:

> [F]irst, Detective Eckert testified that he interviewed the victim over the phone for purposes of obtaining identifying information needed for the arrest warrant application.  It appears the primary purpose of his testimony was to lay the foundation for the introduction of the arrest warrant and establish the fact of arrest.  Relatively speaking, Detective Eckert's testimony was insignificant.  Moreover, in closing argument the State mentioned Detective Eckert's testimony only briefly.  Second, Detective Eckert testified to the same facts Officer Carter testified to, hence, his testimony was cumulative.  Third, the material point of Detective Eckert's testimony consisted of a statement made by the victim that Lee struck her with a hammer.  This testimony was corroborated through the introduction of photographs of the victim's injuries taken at the scene moments after the incident, as well as Officer Carter's testimony.  Further, the State corroborated the victim's mother's statement by introducing the letter written by Lee admitting his guilt.  Fourth, there is nothing in the record to suggest that the trial court refused to allow Lee a full and fair opportunity to cross-examine Detective Eckert.  Finally, the State introduced the "excited utterance" statements of the victim regarding the nature of the incident and the perpetrator of the incident.  The State provided photographic and testimony evidence of the victim's injuries, as well as a letter written by the defendant admitting to the crime.

State v. Lee, 826 So.2d at 626-627; State Rec., Vol. I of II.

Habitual Offender Adjudication/Ineffective Assistance of Counsel

In his two remaining claims, petitioner argues that the state failed to meet its burden of proof in the habitual offender proceedings and that his counsel was ineffective in those proceedings. The Louisiana Fourth Circuit Court of Appeal rejected those claims, holding:

> Relator's claim of ineffective assistance of counsel for failure to challenge his multiple offender status is barred post conviction. State ex rel. Melinie, 93-1380 (La. 1/12/96), 665 So.2d 1172. For the same reason, relator's assertion that the State failed to provide proof of a prior guilty plea is also barred.[23]

Based on that ruling, the state argues that petitioner's claims are likewise barred in this proceeding.

This Court has no hesitation in finding that the claim regarding the state's alleged failure to meet its burden of proof is in fact procedurally barred. Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

---

[23] State v. Lee, No. 2005-K-1060 (La. App. 4th Cir. July 29, 2005) (unpublished); State Rec., Vol. II of II. The Louisiana Supreme Court denied the related writ application without assigning reasons. State ex rel. Lee v. State, 935 So.2d 146 (La. 2006) (No. 2006-KH-0382); State Rec., Vol. II of II.

- 15 -

As noted, in the last reasoned state court judgment addressing petitioner's claim regarding the sufficiency of the state's evidence in the habitual offender proceeding, the Louisiana First Circuit Court of Appeal rejected that claim based on the Louisiana Supreme Court's decision in Melinie, in which it was held that claims involving sentencing errors may not be asserted in post-conviction proceedings.   Federal courts have long held that the Melinie decision generally constitutes an independent and adequate ground to support the application of a procedural bar.   See, e.g., Hull v. Stalder, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept. 28, 2000); Madina v. Cain, Civ. Action No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sept. 20, 2006); Johnson v. Andrews, Civ. Action No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); Williams v. Miller, Civ. Action No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. July 24, 2006); Dedmond v. Cain, Civ. Action No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. June 30, 2005); Leonard v. Hubert, Civ. Action No. 00-0511, 2001 WL 333123, at *7 (E.D. La. Apr. 4, 2001).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably

- 16 -

available to counsel, and ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).  In his federal application, petitioner has made no attempt to establish cause for the failure to raise the claim on direct appeal.  "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Without a showing of cause and prejudice, a petitioner's defaulted claims are procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice.  The fundamental miscarriage of justice exception is limited to claims of actual innocence. See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).  However, it is unclear to what extent, if any, the "actual innocence" exception is available when the defaulted claims relate merely to an alleged sentencing error in a noncapital proceeding.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced as habitual or multiple offenders.  Id. at 265-66.  However, the Haley court held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received."  Id. at 264. The Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit.  Dretke v. Haley, 541 U.S. 386 (2004).

- 17 -

In so doing, the Supreme Court declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors.  Id. at 393-94.

       This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is available to defaulted claims regarding noncapital sentencing errors, petitioner has failed to establish that he was legally ineligible for the habitual offender sentence he received.[24]  Thus, he has not demonstrated that any miscarriage of justice will result from application of the procedural bar.

       Accordingly, for the foregoing reasons, the undersigned has no hesitation in finding that petitioner's claim that the state failed to meet its burden of proof in the habitual offender proceedings is in fact procedurally barred in this federal proceeding.

       That said, the undersigned does, however, have some hesitation in similarly finding procedurally barred petitioner's claim that his counsel was ineffective in the habitual offender proceedings.  Clearly, as noted, the Louisiana Fourth Circuit also rejected that claim based on Melinie.[25]  Further, this Court notes that authority does exist for the state's position that claims of ineffective assistance in habitual offender proceedings rejected by the state courts based on Melinie are procedurally barred in a federal proceeding.  See, e.g., Simmons v. Cain, Civ. Action No. 06-2299, 2006 WL 3524144, at *6-7 (E.D. La. Dec. 5, 2006).  However, as previously noted, claims

---

[24]  Although he opines that he was wrongly found to be a habitual offender because his predicate convictions were unconstitutional, he has never produced any evidence whatsoever in support of that bald allegation.

[25]  State v. Lee, No. 2005-K-1060 (La. App. 4th Cir. July 29, 2005) (unpublished); State Rec., Vol. II of II.

are procedurally barred in a federal *habeas corpus* proceeding only if they were rejected by the state courts based on a state bar that is "strictly or regularly followed by state courts."  Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001).  As petitioner notes in his traverse,[26] Louisiana courts consistently hold that ineffective assistance of counsel claims generally must be asserted in post-conviction proceedings, not on direct review.  See, e.g., State v. Deruise, 802 So.2d 1224, 1247-48 (La. 2001). Further, this Court notes that Louisiana jurisprudence indicates that claims alleging ineffective assistance of counsel in habitual offender proceedings may be asserted in post-conviction proceedings.  See, e.g., State v. Francois, 884 So.2d 658, 664 (La. App. 4th Cir. 2004) ("As to Mr. Francois' claim that his counsel was ineffective in failing to object to the State's inclusion of his co-defendant's prior conviction in the multiple bill, we find it appropriate to reserve that issue to post-conviction relief."); State v. Bates, 742 So.2d 1004, 1008 (La. App. 5th Cir. 1999) (holding that claim regarding counsel's alleged ineffectiveness in a multiple offender proceeding should be raised in an application for post-conviction relief).  Therefore, it is arguably debatable whether Melinie is an adequate basis to support a federal procedural bar of an *ineffective assistance of counsel* claim.

Nevertheless, a federal *habeas* court need not determine whether a claim is in fact procedurally barred if the claim clearly fails on the merits.  See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992).  Because petitioner's ineffective assistance of counsel claim clearly fails on the merits, the undersigned recommends that it simply be denied on that basis.

---

[26]  Rec. Doc. 14.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial."  <u>Crockett</u>, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

In the instant case, petitioner argues that counsel should have filed written objections to the multiple bill of information pursuant to La.Rev.Stat.Ann. § 15:529.1(D)(1), because, if he had done so, the prosecution would have been unable to meet its burden of proof to establish the constitutionality of the predicate convictions used to enhance petitioner's sentence.  However, to demonstrate the requisite prejudice to prevail on this claim, petitioner must show that his prior convictions were in fact constitutionally invalid or that the state could not have proved that they were constitutionally valid if required to do so in the habitual offender proceeding.  <u>See, e.g.</u>, <u>Stevenson v. Cain</u>, Civ. Action No. 06-1244, 2006 WL 2850167, at *7 (E.D. La. Oct. 4, 2006).  Because petitioner has made no such showing in this case, he has failed to meet his burden of proof and his ineffective assistance of counsel claim necessarily fails.

## **<u>RECOMMENDATION</u>**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Benjamin Lee be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twentieth day of June, 2007.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE